# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

_____

ROSEMARY B.,

                               Plaintiff,

  v.                                                       5:21-CV-241 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

_____

JUSTIN GOLDSTEIN, ESQ., for Plaintiff
HUGH DUN RAPPAPORT, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, with the consent of the parties, to conduct all proceedings and enter final judgment, pursuant to the Social Security Pilot Program, and in accordance with the provisions of N.D.N.Y. General Order No. 18, 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and N.D.N.Y. Local Rule 73.1.  (Dkt. Nos. 4, 6).

## I. PROCEDURAL HISTORY

On January 24, 2018, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on that date. (Administrative Transcript ("T") 208-213).  Plaintiff's application was denied initially on May 1, 2018. (T. 87-101).  Administrative Law Judge ("ALJ") Michael J. Kopicki granted plaintiff's request for a hearing and heard testimony from plaintiff and from vocational expert ("VE") Dwayne Evans on November 6, 2019. (T. 13-63).  On March 2, 2020, the ALJ issued an order denying plaintiff's claim. (T. 102-124).  The ALJ's decision became the

Commissioner's final decision when the Appeals Council denied plaintiff's request for review on January 7, 2021. (T. 1-7).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational

>factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

3

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III.   FACTS

Plaintiff was fifty-four years old on the date of the administrative hearing. (T. 29, 210). She is a high school graduate who attended special education classes. (T. 19, 428). She also completed training as a child care provider and a certified nursing assistant. (T. 240, 428). Her prior employment included work as a housekeeper, teacher's aide at a day care center, and a personal care aide for a home health care provider. (T. 250, 428). She stopped working in January 2018 after injuring her left hand while assisting a home health care client. (T. 20-27, 322).

Plaintiff had surgery on her left thumb in February 2019, but still reported difficulty gripping or otherwise using the hand afterwards. (T. 31, 322). She testified that she experienced arthritic pain on the left side of her body that was aggravated by walking less than two city blocks, and became short of breath with exertion such as climbing stairs. (T. 32-37). Plaintiff also testified that she was prescribed a walker with

a seat so that she could rest as needed. (T. 32, 1241). According to plaintiff, sitting reduced her pain level, and she estimated that she could sit for two hours at a time before needing to shift positions. (T. 36).

The ALJ's decision and the parties' briefs provide a detailed statement of the medical and other evidence of record. Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV. THE ALJ'S DECISION

The ALJ first found that plaintiff met the insured status requirements for DIB through September 30, 2022, and had not engaged in substantial gainful activity ("SGA") since the alleged onset date of January 24, 2018. (T. 107). At step two of the sequential evaluation, the ALJ determined that plaintiff had the following severe impairments: "diabetes with neuropathy, left thumb and left wrist osteoarthritis, obesity, and is status-post left cubital tunnel release surgery." (T. 107-111). The ALJ concluded that a number of plaintiff's other alleged impairments were non-severe, including obstructive sleep apnea, asthma, chronic obstructive pulmonary disease, low vision, hypertension, kidney disease, shoulder and back pain, learning disabilities, depression, and anxiety. (*Id.*) At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. (T. 111-112).

At step four, the ALJ found that plaintiff had the RFC to perform less than the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b). (T. 112-116). Specifically, he found that plaintiff could

>lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for a total of six hours in an eight-hour day with normal breaks and sit for a total of six hours in an eight-hour workday with normal breaks. She can never climb ladders, ropes, or scaffolds, and occasionally climb ramps and stairs. She can occasionally balance, stoop, crouch, and crawl. She should avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dust, gasses, poor ventilation, and other respiratory irritants. She should avoid concentrated exposure to hazards such as unprotected heights and dangerous machinery. She can frequently handle with the non-dominant left upper extremity.

(T. 112). In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529" and Social Security Ruling ("SSR") 16-3p. (*Id*.) The ALJ further stated that he considered opinion evidence and prior administrative medical findings pursuant to 20 C.F.R. §§ 404.1520c. (*Id*.) The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 113).

Next, the ALJ evaluated the VE testimony and found that plaintiff was capable of performing her past relevant work as a teacher's aide. (T. 116). Relying on the VE's identification of representative occupations that an individual with plaintiff's RFC could perform, the ALJ made the alternative finding that there were other unskilled light work jobs existing in significant numbers in the national economy that plaintiff could also perform. (T. 117-118). Accordingly, the ALJ determined that plaintiff was not disabled at any time between the alleged onset date of January 24, 2018 through the

6

date of the ALJ's decision. (T. 118).

## V.     ISSUES IN CONTENTION

Plaintiff raises the following arguments challenging the ALJ's decision:

1. The ALJ erred at step two by finding plaintiff's respiratory impairments were not severe impairments, and compounded that error by failing to properly consider plaintiff's respiratory impairments as part of the RFC determination. (Plaintiff's Brief ("Pl.'s Br.") at 11-16) (Dkt. No. 20).

2. The ALJ erred at step three by failing to consider whether plaintiff's respiratory impairments satisfied a Listing. (Pl.'s Br. at 12-16).

3. The ALJ's RFC determination was not supported by substantial evidence because he failed to properly evaluate plaintiff's functional limitations, including, but not limited to, her need for a walker. (Pl.'s Br. at 16-24).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 4-21) (Dkt. No. 25).

For the reasons stated below, this court agrees with plaintiff that the ALJ erred in his step two evaluation of plaintiff's respiratory impairments, and by failing to determine the medical necessity of plaintiff's walker.  As a result, the ALJ's evaluation of the medical opinion evidence, his step three and four determinations, and his ultimate finding that plaintiff was not disabled, were tainted.  Therefore, this court orders a remand for further administrative proceedings to properly evaluate the objective medical evidence and develop the record as necessary, evaluate the persuasiveness of the medical opinion evidence, and reach an RFC determination that is supported by substantial evidence.

**DISCUSSION**

## VI. <u>SEVERE IMPAIRMENT</u>

### A.    Legal Standards

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1522(a), 416.922(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Monique Danielle W. v. Comm'r of Soc. Sec.,* No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v.*

*Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

"'An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities.'" *Christian H. v. Comm'r of Soc. Sec.*, No. 20-CV-1490, 2022 WL 3648022, at *3 (W.D.N.Y. Aug. 24, 2022) (quoting *Jeffords v. Astrue*, No. 11-CV-620S, 2012 WL 3860800, *3 (W.D.N.Y. Sept. 5, 2012) (citation omitted)). The step two analysis "may do no more than screen out *de minimis* claims." *Vogt on behalf of Vogt v. Comm'r of Soc. Sec.,* No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)).

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Comm'r of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523(c), 416.923(c).

**B.     Analysis**

In evaluating plaintiff's respiratory impairments at step two, the ALJ stated:

The claimant further alleges she is disabled because of asthma and chronic

9

> obstructive pulmonary disease ("COPD"). . . .The record documents pulmonary function testing that showed lung restriction, although some tests noted she exhibited poor effort on testing rendering the results difficult to interpret. . . . During an evaluation in August 2019, she reported having shortness of breath only once a week and her respiratory examination was normal. . . . She also had a normal respiratory examination during her consultative examination with Kalyani Ganesh, M.D. . . . Thus far, the evidence is mixed and thus not establish [sic] that the claimant's respiratory conditions more than minimally affects her ability to work and they are non-severe impairments.

(T. 108) (record citations omitted).

When evaluating the medical record, an ALJ "must consider evidence holistically and may not cherry-pick from the record." *Harvey v. Comm'r of Soc. Sec.*, No. 1:20-CV-1484 (FB), 2021 WL 4463380, at *2 (E.D.N.Y. September 29, 2021). "Cherry picking 'refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'" *Dowling v. Comm'r of Soc. Sec.*, No. 5:14-CV-0786 (GTS/ESH), 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015). Although the ALJ in this case describes the evidence regarding the severity of plaintiff's asthma and COPD as "mixed," he committed legal error by depicting plaintiff's medical records in a manner that creates the appearance of improper cherry picking of the evidence.

For example, the ALJ refers to pulmonary function testing ("PFT") that showed lung restriction, but notes that evaluators deemed some results difficult to interpret due to plaintiff's "poor effort on testing." (T. 108, 992),  This emphasis on instances where

plaintiff had difficult performing the tests[1] ignores a number of other presumably valid PFT results from the relevant period where plaintiff's respiratory capacity was deemed "very poor" and she was assessed as having "very severe obstruction with low vital capacity." (T. 997, 1010-1013). These test results gave plaintiff an estimated lung age greater than 84 years.[2] (T. 1010-1013). Her physicians deemed some other PFT results invalid because plaintiff "could not sustain the exhalation long enough," rather than from a perceived lack of effort. (T. 1000).

In concluding that plaintiff's asthma and COPD were not severe, the ALJ also cited "normal" respiratory results during a March 2018 consultative examination and a single treatment note from August 2019 describing "normal" respiratory examination results and "shortness of breath only once a week." (T. 108, 987). Dependence on these examination notes, without further explanation, is misplaced.

Courts have long recognized that consultative examinations may not accurately reflect an individual's long-term functional limitations. *Sweet v. Astrue*, 32 F. Supp. 3d 303, 315 (N.D.N.Y. 2012) (quoting *Crespo v. Apfel*, No. 97-CIV-4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17, 1999) (consulting physician's opinions "are often

---

[1] The PFT in question were spirometry tests, which require the patient to forcefully exhale and then inhale into a tube connected to a machine that measures the amount of air blown out and breathed back into the lungs. The patient typically repeats this exercise two to three times, and may be given a bronchodilator medication to repeat the series of tests for comparison. https://my.clevelandclinic.org/health/diagnostics/17966-pulmonary-function-testing.

[2] An estimated lung age is derived from spirometry data. A lung age older than an individual's chronological age is considered an indication of the accelerated decline or impairment of lung function, and the difference between lung age and chronological age is used to estimate the severity of functional impairment. *See* Liang, X., Xie, Y., Gao, Y. *et al. Estimation of lung age via a spline method and its application in chronic respiratory diseases*. npj Prim. Care Respir. Med. 32, 36 (2022) https://doi.org/10.1038/s41533-022-00293-9.

brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day")). In this case, the consultative examiner did not perform a PFT, and did not have access to plaintiff's treatment history aside from plaintiff's own description that her asthma was "usually triggered by exposure to dust and weather."[3] (T. 423).

The ALJ's reliance on the August 2019 treatment note is similarly misplaced, because the same note describes plaintiff as "quickly" becoming short of breath and using two separate bronchodilator inhalers twice daily along with a rescue inhaler up to twice a day to manage her coughing, wheezing, and other respiratory symptoms. (T. 987). Plaintiff's treatment history include several other similar descriptions of plaintiff quickly becoming short of breath with ordinary exertion such as climbing stairs, and documents her use of multiple prescription inhalers to manage her symptoms on a daily basis. (T. 456, 1000, 1006-1007, 1234). Although an ALJ is not required to recite every shred of medical evidence, his selective citation to the record with regard to plaintiff's respiratory impairments at step two did not reliably assess the impact of plaintiff's asthma and COPD on her ability to perform basic work functions.

Although this court stops short of concluding that plaintiff's asthma and/or COPD are severe impairments, it does find that the ALJ's reasoning, as set forth at step two of his decision, is at odds with the longitudinal record and creates the appearance of improper cherry-picking of the evidence. It also finds that the ALJ's error at step

---

[3] The consultative examiner incorporated this description into his opinion, by recommending plaintiff "avoid known respiratory irritants." (T. 426).

two is not harmless. Upon finding that plaintiff had no severe respiratory impairments, the ALJ did not consider whether plaintiff met or medically equaled Listings 3.02 (Asthma) or 3.03 (COPD). (T. 1111-1112). At step four, the ALJ found that plaintiff should avoid "concentrated exposure to respiratory irritants," but did not assess the functional limitations that plaintiff's respiratory impairments might impose on her ability to meet the exertional requirements of light work. (T. 114). Since this court finds that the ALJ's error at step two necessarily affected the remainder of his analysis, remand for further administrative proceedings is required.

## VII.   RFC/EVALUATING MEDICAL EVIDENCE

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

    B.    **Application**

        1.    **The ALJ Erred in Evaluating the Medical Necessity of Plaintiff's Walker.**

When assessing a plaintiff's functional limitations as part of the RFC analysis, an ALJ must consider an individual's need for an assistive device such as a cane or a walker.  *Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. September 6, 2018).  The plaintiff has the burden to establish medical necessity.  *See*

*Wilson v. Comm'r of Soc. Sec.*, No. 6:13-CV-643 (GLS/ESH), 2014 WL 4826757, at *11 (N.D.N.Y. Sept. 29, 2014). For an assistive device to be medically necessary, "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). A walker need not be prescribed to be considered medically necessary, but a physician's mere observation that a patient used an assistive device or had an unsteady gait does not satisfy this burden. *See Hoke v. Colvin*, No. 1:14-CV-663, 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015). When there is medical documentation about a cane or walker in the record, an ALJ's failure to determine whether the assistive device is medically necessary or to incorporate the use of a medically necessary device into the RFC is legal error. *See Charles F. v. Comm'r of Soc. Sec.*, No. 19-CV-1664, 2021 WL 963585, at *4 (W.D.N.Y. Mar. 15, 2021).

Plaintiff's medical record contains numerous references to her use of a "wheeled walker with a seat." (T. 742, 753, 844, 987, 1088, 1238, 1286, 1290-91). The assistive device was prescribed by her primary care physician, Dr. Disha Narula, in September 2018. (T. 1241). Dr. Narula also referenced plaintiff's use of a walker in her February 21, 2019 opinion. (T. 611). There is some evidence that the walker was first prescribed after pain from a hernia made it difficult for plaintiff to walk. (T. 844). However, plaintiff continued to use the device after having hernia surgery in November 2018, and treatment notes show plaintiff was advised to use the walker "when unable to walk due

15

to leg pain." (T. 844, 851, 1238). Plaintiff testified that she needed the walker because she frequently need to rest while walking short distances. (T. 32, 46-47).

Notwithstanding the considerable record evidence showing that plaintiff regularly used the walker for ambulation, the ALJ failed to meaningfully address whether the assistive device was medically necessary. During his discussion on the topic, the ALJ merely stated:

> I acknowledge that the record documents that the claimant has used a walker during some evaluations. However, it is unclear the reason for this assistance. . . . She walked with a normal gait without assistance during her consultative examination, and had intact gait during other evaluations . . . . As described above, her foot examinations were generally normal. The claimant also reported she could still make simple meals, handle her finances, and go on walks; she even purchased an exercise bike . . . . She has been healthy enough to go on vacations, including a two month visit with her sister. . . . The claimant also reported several times in the record that she was doing well.

(T. 114) (record citations omitted). Despite acknowledging that plaintiff used a walker, the ALJ never determined whether the assistive device was medically necessary. (*Id.*) The unresolved question of plaintiff's need for a walker is critical to the court's ability to evaluate whether the ALJ's RFC determination that plaintiff could perform nearly the full range of light work was supported by substantial evidence. *See Charles F.*, 2021 WL 963585, at *4. ("Because the ALJ did not make an explicit finding about [plaintiff's] use of a cane, this Court does not know whether the ALJ failed to consider the evidence about a cane; found that a cane was not medically necessary; found that a cane was medically necessary but did not impact plaintiff's RFC; or reached some other conclusion.").

In reaching an RFC of less than the full range of light work, the ALJ found that plaintiff could stand and/or walk for a total of six hours over the course of a workday, could frequently[4] lift up to ten pounds, and occasionally lift up to twenty pounds. (T. 112). *See also* 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251 at *6 (January 1, 1983). All of these functions could be impacted by plaintiff's need for a walker. *See Johnson v. Berryhill*, No. 3:17-CV-1651 (VAB), 2019 WL 1430242, at *9 (D. Conn. March 29, 2019) (remanding where ALJ failed to inquire whether cane was necessary for plaintiff to meet walking and standing requirements of typical workday); *Feringa v. Comm'r of Soc. Sec.*, No. 5:15-CV-785 (LEK/CFH), 2016 WL 5417403, at *7 (N.D.N.Y. September 9, 2016), *report and recommendation adopted*, 2016 WL 5415780 (N.D.N.Y. September 28, 2016) (remanding where ALJ's RFC determination failed to fully account for plaintiff's use of a cane while ambulating) *Garcia v. Astrue*, 10 F. Supp. 3d 282, 295 (N.D.N.Y. 2012) (claimant's use of an assistive device such as a cane or walker suggests "some limitation with regard to lifting/carrying/handling[.]"). Because the ALJ did not resolve the question of medical necessity, this court cannot conclude that the ALJ's RFC determination is supported by substantial evidence.

Accordingly, this court finds that the ALJ committed legal error by failing to determine whether plaintiff's walker was medically necessary, despite the record evidence establishing its regular use since September 2018. *See Vanever*, 2018 WL 4266058, at *2 ("Here, there are multiple references in the record as to plaintiff's use of

---

[4] "Frequent" lifting or carrying means occurring from one-third to two thirds of the time. SSR 83-10, 1983 WL 31251 at *6. "Occasionally" means occurring from very little up to one-third of the time. *Id.* at *5.

a cane or walker . . . . Despite this, the ALJ never specifically explained why he did not include the use of the cane in his RFC determination. This was error."). Because the decision is insufficiently clear to allow for meaningful review of whether the ALJ's RFC determination is supported by substantial evidence, remand is also required on this issue.

On remand, the ALJ must consider whether a walker is medically necessary and, if so, incorporate it and any related restrictions into plaintiff's RFC. If warranted, the ALJ should consult a vocational resource as to what extent any necessary assistive device will affect plaintiff's ability to perform her past relevant work and/or make an adjustment to jobs that exist in significant numbers in the national economy.

## VIII. NATURE OF REMAND

### A. Legal Standards

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard ... remand to the Secretary for further development of the evidence" is generally appropriate. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

### B. Application

This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits. *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996). Because this court is remanding for proper consideration of plaintiff's severe and non-severe impairments at step two and the medical necessity of plaintiff's walker, it will not consider plaintiff's additional arguments regarding the ALJ's Listings

analysis at step three and his evaluation of the medical opinion evidence, because those issues will necessarily be revisited as part of the remand. *See, e.g., Dorcas M.L. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1258 (DJS), 2022 WL 580448, at *5 (N.D.N.Y. Mar. 11, 2020) (declining to reach arguments concerning whether ALJ's other findings were supported by substantial evidence where the court had already determined that remand was necessary to properly assess severe and non-severe impairments); *Johnson*, 2019 WL 1430242, at *13 (declining to address purported errors in evaluation of treating physician opinion in light of remand to consider plaintiff's need for cane).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: October 19, 2022

_____
Andrew T. Baxter
U.S. Magistrate Judge